UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| SECOND CHANCE, INC., et al., )<br><br>Plaintiffs and Counter-Defendants, )<br><br>v. )<br><br>UNITED STATES OF AMERICA, )<br><br>Defendant and Counter-Plaintiff. ) | No. 1:25-cv-01665-MJM |

**OPPOSITION TO PARTIAL MOTION TO DISMISS (OR, IN THE ALTERNATIVE, PARTIAL MOTION TO STRIKE) PRAYER FOR RELIEF**

In its counterclaim, the United States alleges that Second Chance., Inc. and Mark S. Foster (collectively, "Second Chance") engaged in repeated and flagrant violations of federal tax law regarding charitable contribution deductions, they were correctly assessed penalties for that conduct, and they should be permanently enjoined to prevent its recurrence. Rather than answering those allegations of serious wrongdoing, Second Chance filed what it fashions a Rule 12(b)(6) motion to dismiss a claim – though it identifies no deficiency in the United States' counterclaim – or, alternatively, a Rule 12(f) motion to strike – though it cites nothing in the counterclaim that might reasonably be seen as "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Disposing of the motion should require little effort from the Court.

But Second Chance's underlying arguments also are incorrect. Far from showing the "lack of clear rules and the IRS's pernicious inconsistency in enforcement of the various standards and rules applicable to the valuation of and accounting for charitable contributions of deconstructed building materials[,]" ECF No. 21-1 at 1, the facts that United States has alleged – and Second Chance was required in their motion to accept as true – show their charitable tax

1

deduction scheme was abusive and unsupported by federal law. That is, as the Fourth Circuit already held regarding a Second Chance customer, the donation of "deconstructed building materials" is not a conveyance of their entire interest in the property to Second Chance, so their attempt to claim the value of their entire houses as a charitable deduction was improper. *See Mann v. United States*, 984 F.3d 317, 328 (4th Cir. 2021).

And this Court has the ability to fully remedy Second Chance's misconduct. Contrary to Second Chance's claim, the Court has authority under 26 U.S.C. § 7402 and its own equitable powers to declare that Second Chance is not entitled to maintain tax-exempt status under 26 U.S.C. § 501(c)(3). A raft of caselaw provides that 26 U.S.C. § 7402(a) confers broad remedial powers on district courts to fashion myriad forms of relief as "necessary or appropriate for the enforcement of the internal revenue laws."

Second Chance's motion is flawed at its core. A Rule 12(b)(6) motion is not intended to challenge a party's demand for relief and a Rule 12(f) motion to strike, already disfavored in the Fourth Circuit, is not the proper method to urge that the Court lacks authority to grant the relief sought by the United States. Second Chance's failure to allege a proper basis for relief under Rule 12 is enough to jettison this dilatory motion.

For all of these reasons, as explained more fully below, the motion should be denied.

**BACKGROUND**[1]

Counterclaim defendants Mark Foster and Second Chance, Inc. organize and sell abusive charitable donation transactions that result in bogus charitable contribution deductions claimed

---

[1]    Second Chance has inappropriately recited numerous facts from ***its own complaint*** in the background section of its memorandum. (ECF No. 21-1 at 3-4.) None of those facts are to be construed as true. In moving to dismiss a counterclaim, the allegation of facts in the
(continued...)

on their customers' tax returns. (ECF No. 16, Answer and Counterclaim at ¶ 1.) Using false

promises of legitimate tax savings, they arrange for their customers to salvage some materials

from homes they intend to demolish, yet promise customers they can claim charitable

contribution tax deductions based upon the full value of their homes, not just the pieces salvaged.

(*Id.* at ¶ 3.) They prepare (or assist in preparing) inflated appraisals, tax worksheets, and IRS

Forms 8283 that grossly overstate the fair market value of donated property and falsely represent

that goods and materials were donated to Second Chance when, in fact, such goods and materials

were not so donated. (*Id.* at ¶ 115.) They have persisted in their conduct even though the Fourth

Circuit conclusively held their customers were not entitled to the promised deductions. (*Id.* at

¶ 113.) They have helped their customers claim as much as $100 million in bogus deductions

over just three tax years. (*Id.* at ¶120.)

### ARGUMENT

I.    **SECTION 7402(a) GRANTS DISTRICT COURTS BROAD AUTHORITY TO FASHION APPROPRIATE EQUITABLE RELIEF.**

At its core, Second Chance's motion is a premature challenge to the Court's authority to

grant the United States complete relief should it prevail in its counterclaim. But Second Chance

is incorrect. Congress has given the IRS and federal courts a robust set of powers to enforce the

internal revenue laws, particularly when it comes to addressing the sale of abusive tax schemes.

The United States has invoked the authority of the Court under 26 U.S.C. §§ 7402(a) and 7408.

---

*counterclaim* are taken as true. *Kansas City Live Block 124 Retail, LLC v. Kobe Kansas, LLC*, 2015 WL 6151266, at *2 (D. Md. Oct. 16, 2015) ("consider the factual allegations in the counterclaim as true, and construe the factual allegations in the light most favorable to the counter-plaintiff"). Thus, the Court is required to disregard the facts that Second Chance repeats from its own complaint, and accept as true only the facts drawn from the United States' counterclaim.

These provisions grant district courts broad power to fashion and order equitable remedies in furtherance of the federal tax laws. Through §§ 7402(a) and 7408, the United States seeks certain equitable relief for the decade-long promotion of an abusive tax scheme by Second Chance; namely, a permanent injunction that will put a stop to the tax shelter promotion; a finding that Second Chance is not entitled to tax-exempt status; an order that Second Chance certify compliance with the permanent injunction for each of the next five years; an order that Second Chance produce a list of participants in the abusive transactions at issue; an order that Second Chance notify its employees and contractors of the terms of the permanent injunction; and an order that Second Chance display a copy of the permanent injunction on its website.

Second Chance's motion is largely geared toward preemptively limiting the scope of this Court's order, should the United States prevail, solely as it relates to revocation of tax-exempt status. While Second Chance readily admits that this Court may enjoin them, they resist any notion that the Court may order them to forfeit the privilege of tax-exempt status. They argue, in effect, that this Court only has the power to stop them from promoting abusive charitable donation transactions, and no more. But the powers granted under § 7402 are not nearly as limited as Second Chance urges.

Section 7402(a) confers broad remedial authority on district courts:

> The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. ***The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws***.

(emphasis added). The statute's broad language demonstrates that, in crafting § 7402(a), Congress intended to grant district courts "a full arsenal of powers" to enforce both the letter and

the spirit of the Internal Revenue Code. *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957) ("It would be difficult to find language more clearly manifesting a congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws."); *see United States v. Ulysses S. Martin, Jr., DDS, PC*, 2019 WL 6618662, at *3 (D. Md. 2019) (quoting *Brody*). Accordingly, in an unbroken line of cases across the country, courts interpreting the scope of § 7402(a) have consistently held that it "encompasses a broad range of powers necessary to compel compliance with the tax laws." *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984); *see United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1354 (11th Cir. 2019) ("Section 7402(a)…grants federal district courts an array of powers to aid in enforcing the tax laws…."); *United States v. ITS Fin., LLC*, 592 F. App'x 387, 394 (6th Cir. 2014) (collecting cases and noting "[n]umerous courts have commented on [§ 7402's] expansive scope").

Section 7402(a) "confirm[s] and codif[ies] the equity jurisdiction of the federal courts" in tax cases. *United States v. Kaun*, 633 F. Supp. 406, 409 (E.D. Wisc. 1986); *see also United States v. First Nat. City Bank*, 379 U.S. 378, 383 (1965) (quoting *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937)) ("[O]ur review of the injunction as an exercise of the equity power granted by 26 U.S.C. § 7402(a) ***must be in light of the public interest involved***: 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest.'") (emphasis added). Courts have repeatedly rejected taxpayers' attempts to narrow the breadth of remedies available under the statute's "broad and clear" language. *United States v. First Nat. City Bank*, 568 F.2d 853, 855 (2d Cir. 1977); *see ITS Fin., LLC*, 592 F. App'x at 394-98; *Ernst & Whinney*, 735 F.2d at 1300.

In *United States v. First National City Bank*, the Supreme Court held that § 7402(a) authorized a district court to temporarily enjoin a bank from transferring any property or rights to property held for a foreign corporation while the Government sought to foreclose a tax lien against it. *First Nat. City Bank*, 379 U.S. at 380. According to the Supreme Court, "our review of the injunction as an exercise of the equity power granted by 26 U.S.C. § 7402(a) must be in light of the public interest involved: 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" *Id.* at 383 (citation omitted). Indeed, there are decades of well-established precedent holding that, "[o]nce jurisdiction is established, courts maintain the authority to provide equitable relief commensurate to the harm." *Huie v. Bowen*, 788 F.2d 698, 704-05 (11th Cir. 1986) (citing *Califano v. Yamasaki*, 442 U.S. 682 (1979)).

As a result, examples of how federal courts have fashioned relief under § 7402(a) are as varied as the abuses those courts have encountered. To wit:

- Ordering or authorizing revocation of preparer tax identification numbers ("PTIN") and electronic filing identification numbers ("EFIN"). *United States v. Padilla*, 2019 WL 7476434, at *1 (C.D. Cal. 2019) ("Padilla will surrender, pursuant to 26 U.S.C. § 7402, all existing PTINs or EFINs registered in his or RMD's name or in any name used for any purpose by Padilla."); *see also United States v. St.-Hilaire*, 2024 WL 2871773, at *12 (S.D. Fla. 2024); *United States v. Kroll*, 2020 WL 5539793, at *2 (M.D. Ga. 2020); *United States v. Frias*, 2024 WL 5497896, at *2 (D. Conn. 2024); *United States v. Vazquez*, 2018 WL 4940827, at *11 (C.D. Cal. 2018); *United States v. Siegel*, 2015 U.S. Dist. LEXIS 168469, at *3 (S.D. Cal. 2015).

- Requiring tax return preparation business to retain a third party to monitor compliance with an injunction. *United States v. ITS Fin., LLC*, 2013 WL 5947222, at *70 (S.D. Ohio 2013) ("The preliminary injunction required ITS to retain an independent, third party to monitor ITS franchisees' compliance").

- Prohibiting tax return preparation business from offering certain loan products. *ITS Fin., LLC*, 2013 WL 5947222, at *98.

- Ordering disgorgement of ill-gotten gains generated from promotion of abusive tax schemes. *United States v. RaPower-3, LLC*, 343 F.Supp.3d 1115, 1194-97 (D. Utah

2018), *aff'd*, 960 F.3d 1240, 1250-52 (10th Cir. 2020); *see also United States v. Stinson*, 729 F. App'x 891, 899 (11th Cir. 2018).

- Appointing receivers to ensure compliance with the Code such as timely filing of tax returns, timely paying taxes due, or assisting in the collection of past due tax debts. *See, e.g., United States v. Latney's Funeral Home*, 41 F. Supp. 3d 24, 27 (D.D.C. 2014).

- Ordering the surrender of certifying acceptance agent ("CAA") registration. *United States v. Gonzalez*, 2019 WL 2413025, at *1 (C.D. Cal. 2019)

- Freezing a defendant's assets. *First Nat. City Bank*, 379 U.S. at 385.

- Ordering a defendant to permanently close all tax return preparation stores. *United States v. Marc*, 2020 WL 5542819, at *2 (M.D. Fla. 2020) ("pursuant to 26 U.S.C. §§ 7402(a) and 7407, [defendants] are DIRECTED to immediately and permanently close all tax return preparation stores that they own directly or through any entity").

- Prohibiting the provision of tax advice for compensation. *United States v. Siegel*, 2015 U.S. Dist. LEXIS 168469, at *2 (S.D. Cal. 2015).

- Voiding common-law liens improperly filed on property of government officials assigned to collect delinquent taxes. *See, e.g., Ryan v. Bilby*, 764 F.2d 1325, 1327 (9th Cir. 1985).

- Enjoining individuals from disseminating false information regarding the taxability of wages and salaries. *United States v. May*, 555 F. Supp. 1008, 1009-11 (E.D. Mich. 1982).

- Requiring tax shelter promoters to notify customers of an injunction directly or via website and provide a customer list. *See, e.g.*, *United States v. Jones*, 2011 WL 2680742, at *8 (D. Idaho 2011).

- Ordering an individual to withhold and pay over federal employment and unemployment taxes and to file all required returns. *United States v. Thompson*, 395 F.Supp.2d 941, 942, 945-46 (E.D. Cal. 2005).

- Ordering assets held in foreign bank accounts be repatriated to pay down tax liabilities owed to the federal government. *United States v. Grant*, 2005 WL 2671479, at *3 (S.D. Fla. 2005).

As the cases described above show, Congress has left it within courts' sound discretion to determine which remedy within the "full arsenal" of § 7402(a) "may be necessary or appropriate" in any given case. Here, if the United States prevails, the Court has the statutory and

7

inherent authority to fully remedy the egregious misconduct alleged in the counterclaim, including by declaring that Second Chance is not entitled to § 501(c)(3) status.

**II.     SECOND CHANCE SUGGESTS ILLOGICAL AND UNSUPPORTABLE LIMITATIONS ON THE COURT'S POWER UNDER § 7402(a) TO FASHION APPROPRIATE EQUITABLE RELIEF.**

Second Chance argues that § 7402(a) does not permit a district court to declare that an entity is not entitled to tax-exempt status because there is an administrative mechanism for removing their tax-exempt status. (ECF No. 21-1 at 7.) But they cite no authority for their suggestion that "the United States is asking this Court to do what Congress assigned ***exclusively*** . . . to the administrative domain." (*Id.* (emphasis added).) In fact, the Court's statutory and inherent authority in this area is extensive, and is unaffected by the United States' administrative procedures. The remedies provided by § 7402(a) – already broad – "are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws." 26 U.S.C. § 7402(a). Thus, courts have concluded that the "availability of a permanent injunction under § 7407 does not preclude the grant of the same or a similar remedy under § 7402." *ITS Fin., LLC*, 2013 WL 5947222, at \*87. In other words, these statutory enforcement mechanisms are naturally and deliberately overlapping, they are not exclusive. And they certainly aren't secondary to the United States' administrative procedures to revoke tax exempt status.

Second Chance's effort to bestow primacy on an administrative mechanism flies in the face of the "broad range of powers" embodied in § 7402(a) that empower a court "to compel compliance with the tax laws." Indeed, Second Chance failed to bring to the Court's attention examples where courts fashioned relief under § 7402(a) where other remedies are available administratively. For example, PTINs and EFINs are generally required to prepare and file tax returns for compensation, and are administered by the IRS. Nevertheless, citing § 7402(a), courts

have ordered defendants "to surrender" a PTIN "to ensure that [defendant] does not continue to interfere with the enforcement of the internal revenue laws." *Vazquez*, 2018 WL 4940827, at *11. Likewise, courts have issued injunctions requiring recidivist non-filers to withhold and pay over federal employment and unemployment taxes and to file all required returns, *Thompson*, 395 F.Supp.2d at 942, 945-46, even though the IRS and related Treasury regulations set forth specific (and overlapping) obligations for all employers.

Second Chance also argues they will be deprived of "procedural safeguards" if this Court – rather than the IRS – revokes Second Chance's tax-exempt status. (ECF No. 21-1 at 8.) Of course, the proceedings in this Court themselves guarantee due process. They are governed by a complete set of rules providing Second Chance with ample opportunity to be heard, present evidence, and make their arguments before a decision is rendered. There is no reason to believe the due process afforded Second Chance in this Court will be inadequate. Moreover, if an unfavorable revocation decision were made by the IRS, Second Chance would end up right back here in district court to seek judicial review of that decision. *See* 26 U.S.C. § 7428 (providing for action brought by organization challenging revocation of its existing tax-exempt recognition).

Second Chance suggests, if the United States were to prevail in this Court it should nevertheless be required "to take the results of that ruling to the IRS and initiate the proper administrative process." (ECF No. 21-1 at 10.) Ignoring the nonsensical suggestion that the United States is somehow subordinate to its constituent agency, Second Chance's contention places judicial review of administrative decision-making on its head. Such argument – which contemplates wasteful, duplicative proceedings – should be rejected. Indeed, in that scenario, Second Chance would clearly be estopped from re-litigating their misconduct before the IRS if

9

this Court – on a full evidentiary record in a contested proceeding – made findings that they promoted an illegal tax shelter.

Second Chance also, implausibly, argues that this Court's discretion to fashion a remedy under § 7402(a) is somehow limited by the Government's failure to exhaust administrative requirements before its own constituent agency. (ECF No. 21-1 at 8.) But administrative remedies are what a **taxpayer** must satisfy as a prerequisite for filing suit (either as a waiver of sovereign immunity or as a claims-processing requirement). *E.g.*, *Mullins Coal Co. v. Clark*, 759 F.2d 1142, 1145 (4th Cir. 1985) ("Exhaustion [of administrative remedies] allows the administrative agency to act within the sphere of its special competence, to apply its expertise, and to correct its own errors, and it creates a reasonable division of labor between agency and court."). It is axiomatic that the United States may limit its waiver of sovereign immunity to suit to those litigants who exhaust administrative remedies. Second Chance cites no authority, nor could they, for the proposition that those same requirements apply to the Government. In that regard, Second Chance badly misconstrues *United States v. Ulysses S. Martin, Jr., DDS, PC.* (ECF No. 21-1 at 8).

In *Martin*, the United States sought an injunction under 26 U.S.C. § 7402(a) because the defendant operated a business while continually failing to pay federal employment and unemployment taxes on employees' wages. 2019 WL 6618662, at *4. The Court began its analysis by observing that "[s]ection 7402 manifests the 'congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws,' and it affords the district courts broad discretion in procedural matters relating to the enforcement of tax laws." *Id.* at *3 (citations omitted). The Court analyzed the relevant factors for determining if an injunction should issue, and ultimately decided the Government had met its

burden. That analysis included a finding that the defendant's tax obligations remained unpaid "despite proper notice and demand for payment, bank account levies, and recordation of multiple Notices of Federal Tax Lien." *Id.* at *4. The Government having "exhausted its administrative abilities" to collect the taxes and bring the defendant into compliance, the Court concluded an injunction was necessary and appropriate. *Id. Martin* does not impose "exhaustion" as a **condition** for relief under 26 U.S.C. § 7402(a); it merely noted it as an additional basis for **granting** injunctive relief as necessary and appropriate. Second Chance is mistaken when they argue that *Martin* supports its argument that "the IRS **must** satisfy exhaustion requirements under certain circumstances" – or any circumstances. (ECF No. 21-1 at 8) (emphasis added).

Second Chance's reliance on *United States v. Mobil Corp.*, 543 F. Supp. 507 (N.D. Tex. 1981) (ECF No. 21-1 at 10) is also misplaced. In *Mobil Corp.*, the United States sought a permanent injunction under 26 U.S.C. § 7402(a) to compel inspection of certain records. But the United States declined to use the summons process to compel inspection, opting instead to seek a declaratory judgment that it was entitled to inspect the documents under 26 U.S.C. § 6001. The court concluded the IRS was required to rely on its summons authority for the relief sought, and refused to issue an injunction under 26 U.S.C. § 7402(a). *Id.* at 519. According to the court, 26 U.S.C. § 7402(a) can be used "to order compliance with other Code provisions, including [26 U.S.C. § 6001]" but it "does not itself create a right to inspect." *Id.* Because there was "no contention that Mobil has failed to maintain required records or file requested reports or returns," 26 U.S.C. § 7402(a) "provides no relief here for the IRS." *Id.*

In the present case, unlike *Mobil Corp.*, the United States contends that Second Chance has engaged in misconduct (*i.e.*, using their tax-exempt status to assist customers in claiming bogus tax deductions). The well-pleaded allegations in the counterclaim state, among other

11

things, the counter-defendants prepare (or assist in preparing) inflated appraisals, tax worksheets, and IRS Forms 8283 that grossly overstated the fair market value of donated property and falsely represented that goods and materials were donated to Second Chance when, in fact, such goods and materials were not so donated. The United States also alleges the counter-defendants have helped their customers improperly obtain as much as $100 million in unwarranted refunds – in just three years – due to false deductions. There were no such allegations of misconduct in *Mobil Corp.* and the case is thus inapposite.[2]

Finally, and contrary to Second Chance's suggestion, the facts elicited at trial or on summary judgment will establish that revocation is necessary and appropriate for the enforcement of the tax laws. According to the allegations of fact in the United States' counterclaim, which are to be taken as true for purposes of deciding this motion, Second Chance organizes and sells abusive charitable donation transactions that result in bogus charitable contribution deductions claimed on their customers' tax returns. (ECF No. 16, Answer and Counterclaim at ¶ 1.) District courts are authorized to issue an injunction under 26 U.S.C. § 7402(a) "when necessary or appropriate for the enforcement of the internal revenue laws." "Such an injunction 'is appropriate if the defendant is reasonably likely to violate the federal tax laws again,' which courts assess by evaluating the totality of the circumstances." *United States v. R &*

---

[2]     Second Chance also argues that "United States fails to explain why the IRS should not have to follow its own procedures." (ECF 21-1 at 2.) But the United States filed a counterclaim alleging facts, not a memorandum of law. In any case, our answer is simple: the United States is a sovereign nation that sometimes conditions its waiver of immunity against suit on a litigant's compliance with administrative processes. Second Chance does not have similar immunity against suit by the United States.

*K Tile, Inc.*, 2015 WL 1736802, at *2 (D. Md. 2015) (quoting *United States v. Thompson*, 395 F. Supp. 2d 941, 945-46 (E.D. Cal. 2005)).

Since the facts alleged in the counterclaim are taken as true, the need for an injunction that declares that Second Chance is not entitled to tax-exempt status is apparent, and the Court has plenty of authority to do so. An entity that exploits its tax status to sell a tax scheme to help customers avoid taxes, and enrich itself in the process, has forfeited the privilege of tax exemption. Courts have deployed § 7402(a) in similar circumstances to prevent likely future abuses. *See Vazquez*, 2018 WL 4940827, at *11 (ordering tax return preparer "to surrender" a PTIN "to ensure that [defendant] does not continue to interfere with the enforcement of the internal revenue laws").[3]

## III.    SECOND CHANCE'S CHALLENGE TO A FORM OF RELIEF SOUGHT BY THE UNITED STATES IS OUTSIDE THE BOUNDS OF A MOTION TO DISMISS.

Even if Second Chance had a valid basis to dispute the Court's authority to grant the United States complete relief – which it does not – a Rule 12 motion is not the proper vehicle for that argument. A challenge to the ***form*** of relief sought is outside the bounds of a motion to dismiss. *McCarter v. Univ. of N. Carolina at Chapel Hill*, 2022 WL 4484365, at *6 (M.D.N.C.

---

[3]    Second Chance's brief also contains conjecture and wholly unsupported (and untrue) accusations of retaliation and revenge. (*E.g.*, ECF No. 21-1 at 2 (the counterclaim is "little more than an intimidation tactic in retaliation for Second Chance's initiation of this action").) These aspersions have absolutely nothing to do with the single issue that their motion should be about: whether the United States has sufficiently stated a claim for relief. Second Chance also wrongly suggests that the IRS investigation into their tax shelter promoter activities "found nothing of the sort." (ECF No. 21-1 at 4.) That is obviously wrong. The IRS investigation ultimately resulted in both the assessment and collection of the penalties at issue in Second Chance's complaint and the counterclaim in this suit seeking "to enjoin the counterclaim defendants from organizing, promoting, or selling abusive charitable donation transactions, and assisting in those activities, [and] from aiding or abetting the understatement of tax liability resulting from abusive charitable donation transactions." (ECF No. 16, Answer and Counterclaim at ¶¶ 12, 14.)

Sept. 27, 2022) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2022) ("[I]t need not appear that the plaintiff can obtain the particular relief prayed for in the complaint, as long as the district judge can ascertain from what has been alleged that some relief may be granted by the court.")). Indeed, numerous courts have concluded that a Rule 12(b)(6) motion is "not the proper vehicle to challenge a particular prayer for relief, as it only challenges the sufficiency of a claim." *AG Spectrum Co. v. Elder*, 181 F. Supp. 3d 615, 617 (S.D. Iowa 2016); *see also, e.g., Huertas v. Rhodes,* 2025 WL 3709063, at *6 (D.S.C. Oct. 30, 2025), *rec. adopted,* 2025 WL 3708815 (D.S.C. Dec. 22, 2025) ("The undersigned will not entertain the Defendant's argument here because their 'challenge to the form of relief sought is outside the bounds of a motion to dismiss.'"); *Booker v. Merchant*, 2023 WL 4239186, at *7 (D.S.C. Mar. 30, 2023), *rec. adopted as modified*, 2023 WL 4235588 (D.S.C. June 28, 2023) (same); *Lada v. Wilkie*, 250 F.2d 211, 215 (8th Cir. 1957) (noting that although part of the relief demanded by plaintiffs could not possibly be granted, the complaint should not have been dismissed, since the question was not whether all of the relief asked for could be granted, but whether the plaintiffs could be accorded any relief).

Here, Second Chance's argument that one request in the prayer for relief in the United States' counterclaim is inappropriate does not dispute the sufficiency of the underlying § 7402 or § 7408 claims, and as such, it is not a proper basis for a Rule 12(b)(6) motion to dismiss. Judge Abelson's decision in *Marion v. Anchor Hocking, LLC*, 792 F. Supp. 3d 629, 633 (D. Md. 2025), cited by Second Chance, is not contrary. There, the Court addressed the particular situation arising under Maryland law where punitive damages constitute not a claim but a form of relief. *Id.* at 632-33. "That means a plaintiff who claims entitlement to punitive damages lodges such a request through a prayer for relief—not a separate cause of action." *Id.* at 633. But a Maryland

14

suit seeking punitive damages still requires factual pleading much like a substantive claim for relief: "a plaintiff seeking punitive damages for any tort must 'allege, in detail, facts that, if proven true, would support the conclusion that the act complained of was done with actual malice.'" *Id.* (quoting *Harris v. Dow Chem. Co.*, 2020 WL 6874326, at *3 (D. Md. Nov. 23, 2020)). Judge Abelson, at least, determined that a facially deficient request for punitive damages can be dismissed at the pleading stage. But that is a far different situation than we face here, where no special pleading is required to invoke the Court's broad statutory and inherent authority to fashion and order remedies in furtherance of the federal tax laws. Second Chance's argument that the prayer for relief – to the extent it seeks a declaration that they are not entitled to tax-exempt status – is inappropriate has no bearing on the sufficiency of the United States' underlying claims under 26 U.S.C. §§ 7402 and 7408, and as such, it is not a proper basis for a Rule 12 motion to dismiss. *McCarter,* 2022 WL 4484365, at *6. Accordingly, Second Chance's reliance on Rule 12(b)(6) is misplaced.

## IV.    SECOND CHANCE'S MOTION TO STRIKE IS DISFAVORED AND SHOULD BE DENIED.

Lacking a valid basis for dismissal of a ***claim*** under Rule 12(b)(6), Second Chance has essentially filed a motion to strike one portion of the United States' prayer for relief under Rule 12(f), as they seem to acknowledge. Rule 12(f) permits a court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. But "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citing 5A A. Charles Alan Wright & Arthur R. Miller*, Federal Practice & Procedure* § 1380, 647 (2d ed. 1990)). In any event, "when reviewing a motion to strike, the court must view the pleading under attack in a

light most favorable to the pleader." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 611 (D. Md. 2018) (citation and internal punctuation removed). Rule 12(f) motions "will be denied unless the matter under challenge has no possible relation to the controversy and may prejudice the other party." *U.S. ex rel. Ackley v. Int'l Bus. Machines Corp.*, 110 F. Supp.2d 395, 406 (D. Md. 2000) (citation and internal punctuation removed). "A movant can demonstrate prejudice by showing that, for example, inclusion of the defense will affect the scope of discovery." *Jones v. Aberdeen Proving Ground Fed. Credit Union*, 2022 WL 2703825, at *3 (D. Md. 2022). A motion to strike is intended to minimize delay, prejudice, and confusion by narrowing issues for discovery and trial. *Haley Paint Co. v. E.I. du Pont de Nemours & Co.*, 279 F.R.D. 331, 335 (D. Md. 2012).

However, this motion to strike identifies no valid basis for that relief. Second Chance fails to cite any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). It raises no factual or legal issues that will be narrowed by a premature determination that, if the United States prevails, it is not entitled to a declaration that Second Chance cannot enjoy tax exempt status under 26 U.S.C. § 501(c)(3). Second Chance has paused these proceedings by seeking to prematurely dictate the type and manner of relief the Court might fashion. But that determination will be made after presentation of a full evidentiary record and a finding that Second Chance engaged in tax shelter promoter conduct. In fact, the authority cited by Second Chance underscores the premature nature of their motion. "Injunctive relief should be designed to grant the full relief needed to remedy the injury to the prevailing party," but "it should not go beyond the extent of the established violation." *Hayes v. N. State Law Enforcement Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993). In any event, striking a single sentence from the United States' prayer for relief will not save any time or resources. The United

States' counterclaim for permanent injunction will continue even if the Court agrees with every aspect of Second Chance's motion. Indeed, inclusion of the request regarding tax-exempt status will have no effect on the scope of discovery, since the Court's authority to fashion relief is an issue of law and not fact. *Jones*, 2022 WL 2703825, at *3. For this reason, too, the motion should be denied.

## CONCLUSION

For all the foregoing reasons, the Partial Motion to Dismiss (or, in the Alternative, Partial Motion to Strike) Prayer For Relief should be denied.

Dated: March 23, 2026                      Respectfully submitted,

                                           BRETT A. SHUMATE
                                           Assistant Attorney General

                                           JOSHUA WU
                                           Deputy Assistant Attorney General
                                           Tax Litigation Branch

                                           /s/ *Richard G. Rose*
                                           RICHARD G. ROSE
                                           District of Columbia Bar No. 493454
                                           Trial Attorney

                                           HARRIS J. PHILLIPS
                                           Massachusetts Bar No. 675603
                                           Senior Litigation Counsel

                                           Tax Litigation Branch
                                           Civil Division
                                           U.S. Department of Justice

                                           P.O. Box 7238
                                           Ben Franklin Station
                                           Washington, D.C.  20044
                                           (202) 616-2032
                                           richard.g.rose@usdoj.gov